| | |
|---|---|
| 1 | **GAUNTLETT & ASSOCIATES** |
| | David A. Gauntlett (SBN 96399) |
| 2 | James A. Lowe (SBN 215383) |
| | Christopher Lai (SBN 249425) |
| 3 | 18400 Von Karman, Suite 300 |
| | Irvine, California 92612 |
| 4 | Telephone: (949) 553-1010 |
| | Facsimile: (949) 553-2050 |
| 5 | jal@gauntlettlaw.com |
| | cl@gauntlettlaw.com |
| 6 | |
| | Attorneys for Plaintiff |
| 7 | INFOR GLOBAL SOLUTIONS (MICHIGAN), INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| INFOR GLOBAL SOLUTIONS (MICHIGAN), INC., a Michigan corporation, | ) ) ) | Case No.: 5:08-CV-02621-JW (PVT) |
| Plaintiff, | ) ) ) | **INFOR GLOBAL SOLUTIONS' MOTION TO DETERMINE DAMAGES BY MOTION** |
| vs. | ) ) ) | Hearing: April 6, 2009 Time: 9:00 a.m. Ctrm: 8, 4th Floor |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 56 and Civil Local Rules 56-1 and 7-2 of the United States District Court for the Northern District of California, Plaintiff Infor Global Solutions (Michigan), Inc. will move on April 6, 2009 at 9:00 a.m., or as soon thereafter as counsel may be heard, for an order that damages in this case will be determined upon motion.

Plaintiff Infor, as the merger successor in interest to E.piphany, Inc., moves the Court to order a determination upon motion instead of a jury trial the damages due to Infor from Defendant St. Paul Fire and Marine Insurance Company as a consequence of breaching its duty to defend the *Sigma Dynamics, Inc.* lawsuit.

I.      BACKGROUND

This is a declaratory relief insurance coverage action brought by Infor Global Solutions (Michigan), Inc., the successor-in-interest to previously named plaintiff E.piphany, Inc., against E.piphany's Commercial General Liability insurer St. Paul for a determination of St. Paul's duty to defend its insured. Despite a the insured's repeated request for a defense, St. Paul refused to defend, asserting that it had no duty to do so. The parties filed cross motions for summary judgment on the duty to defend.

On December 16, 2008 the Court granted partial summary judgment to Infor and denied the cross-motion of defendant St. Paul, finding that St. Paul had a duty to defend E.piphany in the underlying case styled as *Sigma Dynamics, Inc. v. E.piphany, Inc.*, U.S.D.C., N.D. Cal., No. C04-0569 MJJ (the "*Sigma I* Action") and that St. Paul had breached its duty to defend. *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F.Supp.2d 1244 (N.D. Cal. 2008). The only remaining issue in the case is a determination of the amount of damages due from St. Paul to Infor consisting of the reasonable and necessary defense expenses in the underlying litigation.

On January 6, 2009 the Court ordered the parties to file cross motions on the method of determining damages in this case, setting a hearing for April 6, 2009 [Docket Item # 59].

The parties disagreed in their case management statements as to whether damages in this case must be determined by a jury trial or determined by the Court upon motion. Infor requests a determination by motion.

II.     ASSESSING DAMAGES

A.      The Legal Standards

Infor seeks as damages the defense expenses arising from the underlying action. An insurer with a duty to defend who fails to defend must pay all of the insured's defense expenses subject only to an affirmative showing by the insurer that a portion of the fees are unreasonable or unnecessary.[1] If an insurer breaches its contractual duty to defend, it is "liable for attorneys' fees as provided in the policy, or as 'incurred in good faith . . .' in defending the action."[2] St. Paul owed E.piphany a duty

---

[1] *State of Cal. v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535, 1546 (1998).

[2] *Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 680 (9th Cir. (Cal.) 1993) (quoting CAL. CIV.

to defend "immediately" and "entirely."[3] The Court found St. Paul breached this duty to Plaintiff by refusing to defend Plaintiff.[4] It therefore becomes "liable for all costs and attorneys' fees expended by [its insured] for this purpose."[5]

When the insurer breaches the duty to defend, the insured must prove by a preponderance of evidence the existence and amount of the expenses, which are then presumed to be reasonable and necessary as defense costs.[6] The expenses may include expenses incurred in prosecuting affirmative claims under appropriate circumstances.[7] Once the insured meets its burden of proving the fact and amount of expenses, the breaching insurer must prove by a preponderance of evidence that the expenses are unreasonable or unnecessary to the defense.[8]

*Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 61 (1997) held that the insured is entitled to recover expenses that can include "defense costs that the insurer must incur in fulfilling its duty to defend." *Aerojet* established a the three-part test for determining defense expenditures: (1) the expenditures were conducted within the temporal limits of the insurer's duty to defend; (2) the expenses incurred by the insured were conducted against liability in the coverage suit; and whether (3) the expenses incurred by the insured were reasonable and necessary to avoid or minimize liability. Such an analysis requires a determination of "whether the benefits of the strategy are worth the cost."[9]

E.piphany expenditures were conducted against liability from the accusations within the *Sigma I* lawsuit. As in *KLA-Tencor Corp. v. Travelers Indem. Co. of Ill.*, No. C-02-05641, 2004 WL 1737297, at *8 (N.D. Cal. Aug. 4, 2004), the legal, factual and technical analysis work in the six related Sigma/E.piphany cases was reasonably necessary for the defense of the *Sigma I* claims.

---

CODE § 2778).

[3] *Buss v. Superior Court,* 16 Cal. 4th 35, 49 (1997).

[4] [Docket Item No. 55, Order at 10.]

[5] *Amato v. Mercury Cas. Co.*, 18 Cal. App. 4th 1784, 1793 (1993) (citing *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 564 (1970)).

[6] *Pacific Indem.*, 63 Cal. App. 4th at 1547.

[7] *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 64 (1997).

[8] *Pacific Indem.*, 63 Cal. App. 4th at 1548-49.

[9] *Barratt Am., Inc. v. Transcontinental Ins. Co.*, 102 Cal. App. 4th 848, 862 (2002).

The Court will need to apply these standards to the facts of the underlying actions in order to determine what litigation expenses were conducted against liability in the *Sigma I* action.

### B.  Defending the *Sigma I* Action Necessitated Litigation in Six Related Cases

E.piphany's defense expenses in *Sigma I* were not limited to litigation activity within *Sigma I*. E.piphany had complained in a lawsuit filed in October 2003 (*E.piphany I*[10]) that Sigma had falsely advertised its products by claiming association with E.piphany, trading on E.piphany's history and its highly acclaimed products. Toward the end of *E.piphany I,* the *Sigma I* suit was filed in February 2004 in which Sigma accused E.piphany of disparagement by advertising and by filing the *E.piphany I* suit. It was necessary for E.piphany to defend itself by showing that its statements about Sigma's misconduct were true.  In partial response to the false allegations in *Sigma I*, E.piphany filed a second suit against Sigma (*E.piphany II*[11]) alleging that Sigma had, through its employees, misappropriated E.piphany's trade secrets. E.piphany filed this suit in part to establish that it did not disparage Sigma by asserting that the technology at issue in *Sigma I* had been developed by E.piphany and had been stolen by Sigma and that several of its former employees had taken its trade secrets and technology to found Sigma as a competing software company. This suit served as a direct defense of the allegations in *Sigma I* and ultimately vindicated E.piphany and led to the dismissal of *Sigma I.*

When it became clear that defending itself against Sigma's onslaught was becoming the main point of the litigation, E.piphany tendered the defense of *Sigma I* to its insurer, St. Paul Fire and Marine Insurance Co., on July 22, 2004. St. Paul denied a defense five days later.

The *E.piphany I* suit was dismissed by stipulation September 21, 2004. The *Sigma I* and *E.piphany II* suits became the principal interrelated actions in the dispute with E.piphany asserting that it had not disparaged Sigma because it truthfully advertised that Sigma falsely claimed association with E.piphany and that Sigma had misappropriated the trade secrets underlying its competing software.  E.piphany additionally relied on the affirmative defense in *Sigma I* of unclean

---

[10] *E.piphany v. Sigma Dynamics, Inc.,* San Mateo County Superior Court, case number CIV-434833.

[11] *E.piphany v. Sigma Dynamics, Inc., David Panek, and Cortny Mezzetta Christensen*, San Mateo County Superior Court, case number CIV-439133.

1    hands because of Sigma's misappropriation. E.piphany reached settlements with *E.piphany II*
2    defendants Panek and Christensen in February and June 2005 before the bench trial was concluded.

3    In May 2005, while *Sigma I* was pending, Sigma filed a second suit (*Sigma II*[12]) as a
4    collateral attack on the outcome of *Sigma I*. Sigma complained that E.piphany had engaged in false
5    advertising by publically discussing the granting of summary judgment to E.piphany in *Sigma I*.
6    Meanwhile Sigma appealed from the judgment in *Sigma I* and went to trial in *E.piphany II* in what
7    was effectively another collateral attack on *Sigma I* by trying to prove that it had not misappropriated
8    trade secrets from E.piphany. Shortly afterward, E.piphany successfully moved to dismiss *Sigma II*
9    while the *Sigma I* appeal remained pending.

10   After E.piphany won a decisive victory in *E.piphany II* with a finding on September 26, 3005
11   that Sigma had willfully and maliciously misappropriated E.piphany's trade secrets, Sigma finally
12   dismissed its appeal in *Sigma I* but E.piphany successfully moved to recover attorneys fees for its
13   affirmative claims against Sigma in *E.piphany II*. The court awarded attorneys fees and costs of
14   nearly four million dollars against Sigma, providing a direct benefit to St. Paul by reducing the
15   amount of defense expenses it is liable for. Sigma continued to fight this award and E.piphany
16   brought two more brief actions against Sigma officers, (*E.piphany III*[13] and *E.piphany IV*[14]), alleging
17   misappropriation of trade secrets by former E.piphany employees and Sigma officers that finally
18   ended all the litigation with a payment of the attorneys fees.

19   All six actions were conducted as part of a single defense of Sigma's allegations in *Sigma I*
20   because each action evidenced that Sigma illegally created its software, and therefore was not
21   injured by E.piphany's actions. Indeed, defense counsel billed under a single matter number for the
22   entire series of interrelated cases. The suits were brought piecemeal in different venues because
23   Sigma could proceed in diversity in federal court while E.piphany had to remain in state court
24   because of a lack of diversity jurisdiction over all parties and had to proceed with arbitration in one

---

[12] *Sigma Dynamics, Inc. v. E.piphany* U.S.D.C., N.D. Cal., No. C-05-1852.

[13] *SSA Global Technologies, Inc. and E.piphany, Inc. v. Michel Adar*, San Mateo County Superior Court, case number CIV-454338.

[14] Arbitration demand filed with the American Arbitration Association in April 2006, styled as *E.piphany v. Earl Stahl and Sergey Prigogin.*

1 matter because of contract obligations. But for these jurisdictional complexities, all the issues could 2 and would likely have been resolved in a single lawsuit. *E.piphany I* established that Sigma's 3 advertising for its CRM software used E.piphany's own history, reputation, performance 4 characteristics and awards. *E.piphany II* proved that Sigma created its CRM software by stealing 5 E.piphany's trade secrets. E.piphany defended *Sigma II* by verifying that Sigma had been shown to 6 have misappropriated E.piphany's confidential trade secrets. *E.piphany III* and *E.piphany IV* asserted 7 personal liability of Sigma officers to end all litigation against E.piphany.

**III. DAMAGES CAN BE DETERMINED ON MOTION WITHOUT A JURY TRIAL**

The Court need not hold a jury trial to determine the amount of damages here. The Court has equity jurisdiction over this case and can administer complete relief. The only damages sought are attorneys' fees, costs and prejudgment interest and the Court is well suited to determine the reasonableness and necessity of defense expenses. This damage determination will complete all necessary action in this case.

In *American Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 869, 80 Cal. Rptr. 2d 621, 624 (1998), a declaratory judgment action by the insured, judgment against the insurer in the amount of attorneys' fees expended in the underlying action was proper because "when a court of equity has obtained jurisdiction . . . it will seek to administer complete relief . . . ." On virtually indistinguishable facts to those in this case, the insurer was found to be in breach of its defense obligation and was precluded from seeking a jury trial on reasonableness of fees and costs. The court reasoned:

> Although the legal or equitable nature of a cause of action ordinarily is determined by the relief sought, the prayer for relief in a particular case is not conclusive – and the inclusion of a request for damages as one of a full range of possible remedies does not guarantee the right to a jury trial.
>
> Where (as here) there are equitable and legal remedies sought in the same action, the parties are entitled to have a jury determine the legal issues *unless* the trial court's initial determination of the equitable issues is also dispositive of the legal issues, leaving nothing to be tried by a jury.

*Id.* at 871.

This approach is fully consistent with that applied where adjudication of the right to recover

monies paid in settlement is at issue. *Samson v. Transamerica Ins. Co.*, 30 Cal. 3d 220, 242-43, 178 Cal. Rptr. 343, 356-57 (1981) (rejecting insurer's argument it was entitled to a jury trial on the reasonableness of settlement); *Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 679-80 (9th Cir. (Cal.) 1993) ("When the issue of the amount of a reasonable settlement in good faith is addressed on remand, Zurich will have the opportunity to demonstrate that some portion, if not all, of the settlement amount is allocable to the value of the songs which Killer received in the settlement agreement.").

A number of federal court judges, including Judge Patel in San Francisco, have resolved these issues by motion. This is also the way that prove-up of attorneys' fees incurred in underlying intellectual property litigation is resolved, and for much the same reasons. In *Foxfire, Inc. v. New Hampshire Ins. Co.*, No. C-91-2940 MHP ARB, No. C-91-3464 MHP, 1994 WL 361815 (N.D. Cal. July 1, 1994), the court determined the amount of recoverable damages for breach of duty to defend based on declarations submitted by parties. *See also Comark Communications, Inc. v. Harris Corp.*, No. 95-2123, 1998 U.S. Dist. LEXIS 4036 (E.D. Pa. Mar. 30, 1998) (fee motion in patent infringement case resolved on briefs and affidavits); *Howes v. Medical Components, Inc.*, 761 F. Supp. 1193 (E.D. Pa. 1990) (petition for attorneys' fees, costs and expenses granted on the basis of affidavits and supporting exhibits); *Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021 (E.D. Va. 1994) (in copyright infringement action, court awarded plaintiff's attorneys' fees based on litigating attorney's own affidavits, attorney's itemized billing statements, and affidavits from area attorneys).

Indeed, a New York federal judge, applying California law, resolved fee disputes on motion in an analogous advertising injury coverage dispute where it determined, as is appropriate here, that all fees incurred, including those in the prosecution of counterclaims, were defensive in that they were conducted against liability and that the insured was entitled to prejudgment interest from date of invoice on those fees. *Ultra Coachbuilders, Inc. v. General Security Ins. Co.*, 229 F. Supp. 2d 284, 286 (S.D.N.Y. 2002) (Stanton).

This same process was also utilized and favorably approved by the California Supreme Court when the issue was calculation of the sums incurred in a coverage lawsuit. *Brandt v. Superior Court*

*(Standard Ins. Co.)*, 37 Cal. 3d 813, 819-20, 210 Cal. Rptr. 211, 215 (1985) (Although *Brandt* addressed the right of recovery of attorneys' fees for a bad faith action against its carrier, the court approved utilizing the expertise of the trial court to determine the issue by way of motion, holding that "allocation and award by the trial court would normally be preferable since the determination then would be made after completion of the legal services and proof that otherwise would have been presented to the jury could be simplified because of the court's expertise in evaluating legal services." (citation omitted)).

As in *American Motorists*, a determination of the amount of the attorneys' expenses may be made by way of motion in this case because the Court can determine the facts, relying upon supporting declarations, and apply California law to determine reasonable and necessary defense expenses. The Court can then enter a final judgment.

## IV. CONCLUSION

The Court should determine the damages owed by St. Paul for its breach of its duty to defend its insured based on motion(s) supported by declarations and relevant evidence.

Dated: March 2, 2009            **GAUNTLETT & ASSOCIATES**

By:     /s/ James A. Lowe
        David A. Gauntlett
        James A. Lowe
        Christopher Lai

Attorneys for Plaintiff Infor Global Solutions (Michigan), Inc.