1
SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRUCE D. CELEBREZZE  Bar No. 102181
2
MICHAEL TOPP  Bar No. 148445
SIGRID IRÍAS  Bar No. 129319
3
One Market Plaza
Steuart Tower, 8th Floor
4
San Francisco, California 94105
Telephone: (415) 781-7900
5
Facsimile:  (415) 781-2635
Email:  bruce.celebrezze@sdma.com
6
        michael.topp@sdma.com
        sigrid.irias@sdma.com
7

8
Attorneys for Defendant
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY
9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

| | |
|---|---|
| 13  INFOR GLOBAL SOLUTIONS (MICHIGAN), INC., a Michigan | CASE NO. C08 02621 JW |
| 14  corporation, | **DECLARATION OF SIGRID IRÍAS IN SUPPORT OF APPLICATION OF** |
| 15          Plaintiff, | **DEFENDANT ST. PAUL FIRE AND MARINE INSURANCE COMPANY TO** |
| 16      v. | **CONTINUE DISCOVERY DEADLINE** |
| 17  ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota | **Date:  April 13, 2009** |
| 18  corporation, | **Time:  9 a.m.** |
| 19          Defendant. | **Place:  Courtroom 8, 4th Floor** |
| 20 | **Before: The Hon. James Ware** |

21

22        I, Sigrid Irías, declare as follows:

23        1.        I am an attorney with the law firm of Sedgwick, Detert, Moran & Arnold LLP,

24  counsel for defendant St. Paul Fire and Marine Insurance Company in this matter.

25        2.        Infor has provided our law firm with approximately 673 pages of invoices from

26  O'Melveny & Myers LLP, spanning from October 2003 to October 2006.  Based on my review of

27  the invoices, and based on discussions with counsel for Infor and with Ryan Padden of O'Melveny

28  & Myers LLP, I believe they include reference to at least seven matters in which O'Melveny

F/1573691v1

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1    represented one or the other of Infor's predecessors in interest, E.Piphany and SSA Global. One

2    of the litigated matters O'Melveny handled was *Sigma Dynamics, Inc. v. E.Piphany, Inc*., U.S.

3    District Court, Northern District of California, Case No. 04-00569. I am informed and believe

4    from the records on PACER that case was filed on February 14, 2004, and was dismissed on July

5    26, 2005.

6         3.      Attached hereto as **Exhibit A** is a true and correct copy of the subpoena our law

7    firm served on O'Melveny & Myers LLP on or about January 12, 2009.

8         4.      Attached hereto as **Exhibit B** is a true and correct copy of the response our law

9    firm received from O'Melveny & Myers LLP on or about January 26, 2009.

10        5.      From January 26, 2009, through February 19, 2009, I was in daily communication

11   with one or more or all of the following regarding the subpoena and the documents requested

12   therein: Ryan Padden, the O'Melveny attorney handling O'Melveny's response to the subpoena;

13   Peggy Bruggman, in-house counsel for Oracle, successor to Sigma Dynamics, which had

14   produced some materials pursuant to stipulated protective orders in the underlying litigation; and

15   James Lowe, an attorney for plaintiff Infor Global Solutions (Michigan), Inc., plaintiff in this

16   action. O'Melveny did not make any documents available to our law firm until the afternoon of

17   February 20, 2009.

18        **A.      <u>January 26, 2009</u>**

19        6.      I contacted Ryan Padden of O'Melveny & Myers LLP on January 26, 2009,

20   shortly after we received the response to the subpoena. Attached hereto as **Exhibit C**, as a group

21   exhibit, are emails I sent to and received from O'Melveny & Myers LLP on that date.

22        7.      I spoke with Mr. Padden on January 26, 2009.

23        8.      Mr. Padden said he would not be available to meet and confer until the afternoon

24   of January 30, 2009.

25        9.      Mr. Padden told me the files we had subpoenaed were archived offsite, but that he

26   had requested portions of the file and expected to receive them that afternoon. He had not

27   reviewed the files, and did not know how many boxes would have to be retrieved from storage.

28   He told me he thought there were hundreds.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

10. Mr. Padden said he had spoken with Michael Topp of our law firm about a confidentiality concern, and asked me whether there was a protective order in this case. Mr. Padden said that Oracle was objecting to production of its confidential documents. Mr. Padden sent me an email, included with **Exhibit C** to this declaration, providing me with the contact information for an in-house attorney at Oracle. I understood from Mr. Padden that there were protective orders in place in all of the four cases that were the subject of the subpoena, and I asked him for copies of those orders. Mr. Padden said that he did not have them available. Later that day, I obtained copies of two protective orders filed in San Mateo County Superior Court from James Lowe, counsel for Infor. Those orders are attached hereto as **Exhibits D** and **E**.

11. Mr. Padden told me that twenty to thirty boxes of paper were filed with San Mateo County Superior Court, and that he could not produce those documents in response to the subpoena for two reasons. First, they were stored offsite, and were not physically at O'Melveny's office. Second, there were many sealed documents in the file, and he was not sure whether those were kept in envelopes in the O'Melveny files or whether they were just placed in the pleadings files. Thus, even if he retrieved the files from storage, he could not allow our law firm to review them. Mr. Padden said that he believed every single deposition transcript was marked confidential.

12. A copy of my January 26, 2009 correspondence to Mr. Padden is attached hereto as **Exhibit F**. Mr. Padden's response is attached hereto as **Exhibit G**.

**B.   January 27, 2009**

13. I spoke with Mr. Padden during the morning of January 27 to determine what he believed was inaccurate about my January 26 letter to him. He said that he had not told me the entire file was archived offsite, and that there were emails within the email system at O'Melveny, so it would not be accurate to say that the entire file was archived offsite.

14. Mr. Padden confirmed on January 27 that he was not available any time before the afternoon of January 30 to meet and confer.

15. Our law firm had not received any objection to the subpoena directly from or on behalf of Infor. On January 27, 2009, I emailed counsel for Infor to determine whether Infor

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

F/1573691v1

1   intended to raise any claim of attorney-client privilege. This email is attached hereto as

2   **Exhibit H**. James Lowe's response is attached hereto as **Exhibit I**.

3       16.     On January 27, 2009, I contacted Peggy Bruggman, in house counsel at Oracle.

4   She told me that she had spoken with Ryan Padden and was aware that I might be contacting her.

5   She did not have copies of the protective orders at issue and asked that I forward them to her.

6   My email communications with Ms. Bruggman on January 27, 2009, are attached hereto as a

7   group exhibit at **Exhibit J**.

8       17.     Also on January 27, 2009, I tried to confirm whether there had been a protective

9   order entered in all four lawsuits that were the subject of the subpoena, as I had understood was

10  the case from Ryan Padden. Mr. Lowe told me he was aware only of the two protective orders

11  he forwarded to me. I reviewed the available filings from PACER related to the two federal cases

12  that were the subject of the subpoena and could not locate any protective order that had been

13  entered. My email to Ryan Padden on this subject on January 27, 2009, is attached as **Exhibit K**.

14  In a later phone discussion, Mr. Padden confirmed that no protective orders had ever been entered

15  in the federal lawsuits.

16      **C.     January 28 and 29, 2009**

17      18.     On or about January 28, 2009, Mr. Padden told me that he had sent a copy of

18  O'Melveny's correspondence files to counsel for Infor, who would be reviewing them for

19  privilege.

20      19.     Also on January 28, 2009, and on January 29, 2009, I visited the San Mateo

21  County clerk's office to personally review files available there. The San Mateo County Superior

22  Court case ending in 133 was held in ten boxes, and much of the file was sealed and unavailable

23  for viewing.

24      **D.     January 30, 2009**

25      20.     I met with Mr. Padden at his office at Two Embarcadero Center in San Francisco

26  on Friday, January 30, 2009. Emails exchanged with Mr. Padden on this date are attached as

27  **Exhibit L**. He confirmed that he had provided counsel for Infor with a copy of all of

28  O'Melveny's correspondence "clips" (i.e., files) pertaining to the subpoenaed files. Mr. Padden

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-4-                                 CASE NO. C08 02621 JW

DECLARATION OF SIGRID IRIAS RE MOTION TO CONTINUE DISCOVERY DEADLINE

1    said that he had given Infor's attorney all of the correspondence files except for a small collection

2    of materials that were produced as highly confidential by a third party.

3         21.    Mr. Padden told me he would require a letter from Peggy Bruggman and from

4    James Lowe saying that they would not object to his production of the files, and that O'Melveny

5    would then produce the correspondence files to us.

6         22.    Mr. Padden also told me that O'Melveny did not want to produce internal

7    communications between O'Melveny personnel or attorney work product materials, but that

8    O'Melveny ordinarily did not create research memos, and that intra-attorney emails that were

9    included in the correspondence clips would likely be produced.  He told me, however, that

10   O'Melveny did not want to search of its entire email system for intra-attorney or other emails on

11   the underlying cases because, at the time of these lawsuits were pending, O'Melveny had no firm

12   policy in place about archiving emails by case, and most of those who had worked on the case

13   were no longer with the firm.  Mr. Padden said it would be a huge burden to try to find those

14   emails if they were not significant enough to have been printed out for the paper file.

15        23.    We discussed particular document requests included in the subpoena.  Mr. Padden

16   said that, with respect to Request Nos. 1 to 4, O'Melveny did not have file components not

17   identified by the more specific requests.  With respect to Request Nos. 5 to 8, O'Melveny did not

18   keep archived time sheets, and Mr. Padden was not aware of any other documentation besides

19   invoices sent to the client (which Infor had previously provided to our law firm) that would say

20   what work was being done on each case, or that could help break down the time entries.  There is

21   one "retainer" agreement that was signed at the outset of the litigation, and that was included in

22   the correspondence files provided to Infor's counsel.  With respect to Request Nos. 9 to 12, Mr.

23   Padden said that depositions were available on a disk and that he would provide that to us only

24   after he had Oracle's and Infor's permission.  According to Mr. Padden, he had put all but two

25   depositions on a disk, and, as to those two, they were depositions of two venture capitalists

26   whose depositions included confidential trade secret material of third parties other than Sigma.

27   The documents called for by Request Nos. 13 through 20 and 25 through 28 were included in the

28   correspondence files he had provided to Mr. Lowe, and he did not plan to produce them until

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  after Mr. Lowe had reviewed them for privilege.

2       24.     No documents whatsoever were produced to me on January 30, 2009.

3       **E.      February 3, 2009**

4       25.     On Tuesday, February 3, 2009, I spoke with Peggy Bruggman at Oracle regarding

5  the protective orders and read her a stipulation I had drafted that I thought might address her

6  concerns.  I also reviewed some of the provisions of the existing protective orders that I thought

7  addressed concerns she had raised in prior discussion.  She expressed her concern that something

8  additional, perhaps a protective order in the pending suit between Infor and St. Paul, should be

9  entered, since she would want an actively pending case in which to seek relief if there were to be a

10 problem.  We discussed whether any of the material produced in 2004 or 2005 in the underlying

11 litigation was actually confidential or current at this point, and she said she had discussed that

12 issue with Ryan Padden as well, and that neither of them knew, but they were trying to be

13 cautious.  Ms. Bruggman had several concerns, including an interest in having a provision by

14 which documents not previously designated as confidential could be so designated.

15      26.     Also on February 3, 2009, I telephoned James Lowe, counsel for Infor, and left

16 him a message asking him to call me.

17      **F.       February 4, 2009**

18      27.     On February 4, 2009, I spoke with counsel for Infor and learned that O'Melveny

19 maintains an "E-Room" containing thousands of pages of documents pertaining the lawsuits that

20 are the subject of the subpoena.  Mr. Padden had not informed me of the existence of the E-

21 Room.  Mr. Lowe told me that Mr. Padden had provided Mr. Lowe's office with a password to

22 the E-Room, and that associates in Infor's counsel's office had spent weeks reviewing the

23 documents there.

24      **G.      February 5, 2009**

25      28.     I wrote to Mr. Padden on February 5, 2009, to request a password to the E-Room

26 and to follow up on other issues related to the subpoena.  A copy of that correspondence is

27 attached hereto as **Exhibit M**.  As of the date this declaration is executed, Mr. Padden has not

28 provided our law firm with a password to the E-Room.



F/1573691v1

29.     Mr. Padden's February 6, 2009 response to my February 5, 2009 correspondence is attached hereto as **Exhibit N**.  Also on February 6, 2009, I communicated further with Mr. Lowe concerning a stipulation to address Oracle's concerns.  My email communications with Mr. Lowe of this date are attached as **Exhibit O**.

### H.     February 9 through February 19, 2009

30.     I subsequently had several discussions with both Ms. Bruggman and with James Lowe about entering into a stipulation that would resolve Oracle's confidentiality concerns. Copies of some email communications between me and Ms. Bruggman are attached hereto in a group as **Ex. P**.  Copies of some email communications between me and Mr. Lowe are attached hereto in a group as **Ex. Q**.  I emailed and/or spoke by telephone with one or the other or both of them, and/or with Ryan Padden on an almost daily basis.  Some of these communications are outlined below:

| Date | Communication |
|------|---------------|
| 02/10/09 | Email to Peggy Bruggman concerning draft proposal to address the protective orders. |
| 02/12/09 | Telephone communication with Peggy Bruggman concerning addressing the protective orders. |
| 02/13/09 | Forward revised stipulation to Peggy Bruggman in an effort to address Oracle's remaining concerns; discuss with her by phone. |
| 02/15/09 | Email to Peggy Bruggman with further revised stipulation. |
| 02/16/09 | Forward further revised stipulation to Oracle and to James Lowe incorporating additional change requested by Oracle. |
| 02/17/09 | Phone call to James Lowe concerning latest draft stipulation.  Mr. Lowe was not available to review it at that time due to other matters he had to attend to on an emergency basis. |
| 02/18/09 | Email from James Lowe requesting further revisions to stipulation; telephone discussions with both Peggy Bruggman and with James Lowe concerning his requested revisions; provide further revised draft to both of them. |
| 02/19/09 | Email from James Lowe concerning additional minor revisions to stipulation requested by Infor. |

I also continued to press O'Melveny to at least start its production of documents, since not everything in its file could be deemed confidential, and since the terms of the protective orders

CASE NO. C08 02621 JW

DECLARATION OF SIGRID IRIAS RE MOTION TO CONTINUE DISCOVERY DEADLINE

SEDGWICK
DETERT, MORAN & ARNOLD LLP

F/1573691v1

1  themselves do not preclude O'Melveny from complying with a valid subpoena issued under the

2  auspices of the United States District Court.  A copy of my February 17, 2009 correspondence to

3  Mr. Padden on this subject is attached as **Exhibit R**.  I spoke by phone with Mr. Padden on

4  February 18, 2009.  At that time, he had not inquired of the O'Melveny attorneys who worked on

5  the underlying cases to see whether they had easily accessible email archives.  Also at that time, he

6  was continuing to decline to produce any portion of the file absent written authorization from

7  Oracle and Infor.

8      31.     On February 19, 2009, I finally received the signed stipulation from both Oracle

9  and counsel for Infor.  I immediately forwarded that to Ryan Padden at O'Melveny.

10     **I.      Partial Production Commenced February 20, 2009**

11     32.     During the afternoon of Friday, February 20, 2009, O'Melveny made the

12 documents available to our law firm in a conference room at O'Melveny's office.  Another

13 Sedgwick attorney, Jiaming Shang, and I went to O'Melveny to review the documents.  This

14 initial production consisted of court filings and written discovery contained in eighteen bankers'

15 boxes.  In addition, we were provided with a CD containing deposition transcripts, and a CD

16 containing certain Excel spreadsheets.  We asked O'Melveny to provide us with indexes to the

17 documents, which was done by the end of the day on Friday.  We reviewed those indexes during

18 the weekend, and had tentatively concluded by Monday morning that the best and most expedient

19 course would be to copy the entire 18 boxes.  We returned to O'Melveny on Monday morning to

20 continue the review while awaiting confirmation that our client wished to proceed with copying

21 all of the documents.  That authority was received that morning, and arrangements were made to

22 have the documents picked up by a vendor, IKON, for scanning and Bates stamping.  I had

23 several discussions with IKON concerning expediting the process.  The first ten boxes worth of

24 materials arrived in our office on February 25, 2009, with copies of additional boxes arriving the

25 following day, on February 26, 2009.

26     **J.      Infor's Discovery Responses**

27     33.     On January 12, 2009, our law firm served interrogatories and a request for

28 production of documents on Infor's counsel, concerning Infor's damages claims.  On February 18,

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

F/1573691v1
DECLARATION OF SIGRID IRIAS RE MOTION TO CONTINUE DISCOVERY DEADLINE

2009, we received Infor's responses to interrogatories and a request for production of documents. A copy of the interrogatory responses is attached hereto as **Exhibit S**. A copy of the response to the request for production of documents is attached hereto as **Exhibit T**. *Infor produced no documents whatsoever in response to the document request.* Mr.Lowe has told me that Infor has no documents other than what O'Melveny has provided to his office, and that he has not been able to determine what happened to documentation pertaining to the underlying litigation during the transition between E.Piphany and Infor. In particular, Mr. Lowe told me that Infor did not have a copy of the retainer agreement between E.Piphany and O'Melveny, and that Infor does not have E.Piphany's accounting records.

34.     Attached hereto as **Exhibit U** is a copy of correspondence dated December 18, 2008, received from Infor's attorneys. This correspondence was accompanies by 671 pages of invoices from O'Melveny & Myers LLP spanning from October 2003 to October 2006,[1] and reflecting (albeit in block billing) work done on at least seven litigated matters that O'Melveny handled on behalf of E.Piphany and/or SSA Global, whom, I am informed and believe, are both predecessors of the plaintiff in this case. Those invoices do not reflect amounts actually paid as opposed to amounts invoiced.

35.     James Lowe has told me in telephone discussions that Infor has no documents other than those O'Melveny has provided it with access to.

**K.   Necessity of Documents Still Being Produced**

36.     Because of the fast-approaching discovery cutoff, St. Paul has had no choice but to notice the depositions of the witnesses Infor identified in its answers to interrogatories, as well as the depositions of corporate designees who can testify on behalf of O'Melveny and Infor. Those depositions are now scheduled to occur between March 16 and April 8, 2009. In a telephone discussion with Mr. Lowe during the week of February 23, 2009, I asked whether Infor could pare down its list of witnesses, and he said he could not do so at this time. The deposition notices are attached hereto as a group exhibit as **Exhibit V**. The 90 page objection we received

---

[1] Two missing pages were supplied during the week of February 23, 2009, bringing the total to 673 pages.

F/1573691v1

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1   from O'Melveny in response to the request for a corporate designee to testify concerning

2   O'Melveny's invoices and the underlying litigation is attached hereto as **Exhibit W**.

3   Correspondence between me and Mr. Padden concerning that deposition notice is attached as

4   **Exhibit X**.

5        37.     Adequate preparation for the depositions cannot occur absent sufficient time to

6   digest the documents that only recently started to be produced, and that have still not all been

7   produced.  I am informed and believe that additional billing/invoice documents are being initially

8   reviewed by O'Melveny & Myers, and that those will then be produced to counsel for Infor to

9   review for privilege before they will be produced to Sedgwick.  Access to the E-Room has not yet

10  been provided because O'Melveny has told me they are waiting for permission from James Lowe

11  before providing access to us.  In addition, there remain other outstanding issues including the of

12  production of emails (which has been the subject of ongoing meet and confer as reflected in

13  Exhibits M and R.

14       38.     I believe a ninety-day extension of the current discovery cutoff is warranted under

15  the circumstances presented here and that, absent such an extension, St. Paul will be prejudiced in

16  its defense of this case.

17       39.     I sought a stipulation for this extension of the deadline from James Lowe, and on

18  or about February 26, 2009, emailed him a request that he agree to the extension of time.  Mr.

19  Lowe did not respond to my email.

20       I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true

21  and correct.

22       Executed at San Francisco, California, on the 3 day of March, 2009.

23

24                      \s\

                    SIGRID IRÍAS

25

26

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

DECLARATION OF SIGRID IRIAS RE MOTION TO CONTINUE DISCOVERY DEADLINE

F/1573691v1